See also 147 B.R. 738.

**In re Michael E. CUMMINGS, Debtor.**

**Diane L. CUMMINGS, Plaintiff,**

**v.**

**Michael E. CUMMINGS, Defendant and Third Party Plaintiff,**

**v.**

**BANKWEST and the Small Business Administration, Third Party Defendants.**

**Bankruptcy No. 91–30076.**
**Adv. No. 92–3002.**

United States Bankruptcy Court, D. South Dakota, Central Division.

Nov. 3, 1992.

Robert Riter, Jr., Pierre, S.D., for plaintiff.

James Carlon, Pierre, S.D., for 3rd party plaintiff.

Brent Wilbur, Pierre, S.D., for BankWest.

Thomas Lloyd, Pierre, S.D., for SBA.

## MEMORANDUM OF DECISION RE: DISCHARGEABILITY COMPLAINT

IRVIN N. HOYT, Chief Judge.

The matter before the Court is the dischargeability complaint brought by Plaintiff Diane L. Cummings against Defendant–Debtor Michael E. Cummings. This is a core proceeding under 28 U.S.C. § 157(b)(2). This ruling shall constitute findings and conclusions as required by F.R.Bankr.P. 7052.

## I.

. Diane L. Cummings and Michael E. Cummings purchased a home at 501 North Spruce Street in Pierre, South Dakota while married. The couple resided there with their minor two children until December, 1987 when Michael E. Cummings moved out. At the time he moved out, the home had two mortgages on it. The first was a purchase money mortgage to BankWest. The second mortgage partially secured a business loan of $168,000.00 from BankWest that Michael E. Cummings obtained on October 15, 1986 for his tackle, marine supply, and sporting goods wholesale business known as Cummings Sport Supply. The BankWest business note was guaranteed by the Small Business Administration (SBA). This note was also secured by the business inventory and some vehicles and trailers. Diane L. Cummings signed the second mortgage on the home but did not sign the business loan documents.

The first mortgage on the home went into arrears between June and November of 1988. When Diane L. Cummings learned of this, she cured the arrearage within several months making extra mortgage payments with the current month's mortgage payment. By Order entered February 10, 1989, the Circuit Court for the Sixth Judicial Circuit for the State of South Dakota ordered Michael E. Cummings to make monthly family support payments of $650.00 to Diane L. Cummings.[1] The couple was divorced on May 24, 1989. Pursuant to a Stipulation and Agreement entered in state court that day, the parties agreed that Diane L. Cummings would receive the marital home and assume all debt against that home except any encumbrance "now against the house related to or made on behalf of Cummings Sport Supply." Michael E. Cummings agreed to assume the debt against the house made on behalf of his sport supply business and to have all business encumbrances or mortgages removed from the house on or before December 31, 1989. Diane L. Cummings waived any interest she had in the sport supply

1. The Hon. Patrick J. McKeever presiding, Sixth     Judicial Circuit for the State of South Dakota.

business. Diane L. Cummings also received a 1986 Nissan pickup and the personalty in the house. Michael E. Cummings received some other vehicles and trailers and the business inventory. Diane L. Cummings received physical custody of the minor children and Michael E. Cummings agreed to provide child support of $500.00 per month for both children. No alimony was awarded to either party. The agreement contemplated that Diane L. Cummings would remain in the home for a minimum of thirty months.

For 1989, the year the couple was divorced, Michael E. Cummings had an income of over $30,000.00. His business assets were valued at $584,690.00 with an associated debt of approximately $472,288.00. Diane L. Cummings, then employed as an office/sales person for a trucking company, had an adjusted gross income of $17,894.00 for 1989. Her home was valued at $65,000.00 and the first mortgage on it was approximately $28,000.00.

In January, 1990, without notice to SBA or Diane L. Cummings, BankWest released its lien on certain vehicles so that Michael E. Cummings could seek additional business financing elsewhere. By July, 1991, Michael E. Cummings was in arrears on his SBA guaranteed loan from BankWest. The second mortgage on the house remained in place. Michael E. Cummings turned over his business inventory to BankWest on August 22, 1991. With Michael E. Cummings's knowledge but without notice to Diane L. Cummings, BankWest subsequently sold the business inventory but proceeds were insufficient to cover the debt. According to notes in the loan file at BankWest, as of September 27, 1991, the only remaining collateral for the business debt was the second mortgage on Diane L. Cummings' home.

By order entered October 2, 1991 in state court, Michael E. Cummings was held in contempt of court for failing to timely remove the business encumbrance from Diane L. Cummings's home. He was given until March 24, 1992 to report the status of his efforts to remove the mortgage. Subsequent enforcement efforts in state court by Diane L. Cummings stopped when Michael E. Cummings (Debtor), doing business as Cummings Sport Supply, filed a Chapter 7 petition on October 21, 1991. Among his secured creditors, he listed BankWest for $84,786.93 for a business operating loan and SBA as a guarantor of the BankWest loan. Among his unsecured creditors, he listed Diane Cummings for $40,000.00 for a "divorce/property settlement." On December 16, 1991, Debtor amended his Schedule D to state that the debt to BankWest and SBA was now disputed. On February 3, 1992, Debtor amended his Schedule B-20 to include a claim against BankWest and SBA of an unknown amount.

On February 11, 1992, Diane L. Cummings (Plaintiff–Cummings) filed a nondischargeability complaint against Debtor. She alleged that pursuant to the Judgment and Decree of Divorce entered May 24, 1989 by the Sixth Judicial Circuit Court for the State of South Dakota, Debtor had assumed the business debt to BankWest and SBA and agreed to remove a second mortgage on the family home which secured that debt. She further alleged that Debtor's assumption of the second mortgage is in the nature of a debt for support and maintenance that is excepted from discharge under 11 U.S.C. § 523(a)(5).

Debtor answered the complaint on March 10, 1992. He sought dismissal of the complaint and stated that his assumption of the second mortgage was in the nature of a property settlement and, therefore, dischargeable.[2]

Plaintiff–Cummings filed a trial memorandum on July 21, 1992. Debtor filed his trial brief on July 23, 1992. The trial was held July 27, 1992. Appearances included Robert C. Riter, Jr., and Jerry L. Wattier

---

**2.** Defendant–Debtor also filed a third party complaint against BankWest and SBA that was eventually tried in conjunction with the discharge-ability complaint. That third party complaint is addressed in a separate memorandum decision and order of this Court.

for Plaintiff Cummings and James E. Carlon for Debtor.

Debtor's debt to BankWest/SBA on August 29, 1991 was $84,786.93 plus interest of $5,774.80 ($25.50 daily accrual).[3] The equity that Diane L. Cummings has in her home was not clearly established at trial but it is substantially less than the balance on the note.

## II.

 Under 11 U.S.C. § 523(a)(5), debts to a ... former spouse, or child of the debtor, for ... maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State ... law ..., or property settlement agreement ...

are not discharged under 11 U.S.C. § 727. Whether an obligation is in fact for "support" and thus not dischargeable is a question of federal, not state, law. *Williams v. Williams (In re Williams)*, 703 F.2d 1055, 1056 (8th Cir.1983). Though the decision of the state court should be regarded with deference, the bankruptcy court is not bound by state laws that define an item as maintenance or a property settlement, nor is the court bound to accept a divorce decree's characterization of an award as maintenance or a property settlement. *Id.* at 1057. The crucial question is the function the award was intended to serve. *Id.* Provisions to pay expenditures for the necessities and ordinary staples of everyday life may reflect a support function. *Id.* (cites therein). Moreover, the assumption of the other spouse's debt can be support for bankruptcy purposes. *Id.* Ultimately, a dischargeability question under § 523(a)(5) is a question of fact that the court must decide in light of all facts and circumstances relevant to the intent of the parties at the time the obligation was created. *Id.* at 1058; *Boyle v. Donovan*, 724 F.2d 681, 683 (8th Cir.1984). The creditor

must establish the non dischargeability of the debt by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

## III.

 Upon consideration of § 523(a)(5) and the case law thereon, this Court concludes that Debtor's obligation to remove the second mortgage on Plaintiff–Cummings' home is a debt in the nature of support that is non dischargeable. It is clear that the removal of the second mortgage by Debtor was designed by the parties to insure that Plaintiff–Cummings could afford to remain in the home with the children. Significant facts include the disparity in the relative earning power of the parties at the time of the divorce, the division of debt and property at that time, the parties' agreement that Plaintiff–Cummings would retain physical custody of the children and continue to reside in the home with them, and that support was reduced from $650.00 per month during their separation in early 1989 to $500.00 per month when Debtor assumed the second mortgage at the time of the divorce. Nothing in the divorce decree or the Stipulation and Agreement entered May 24, 1989 nor in the circumstances surrounding them indicate that Debtor's assumption of the second mortgage was simply a division of property.

An order will be entered in accordance with these findings and conclusions.

---

**3.** An SBA official testified that the loan balance at the time of trial was principal of $81,671.93, interest of $13,808.64 (daily interest accrual of $24.61).